**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **4629 PETROLEUM, INC.,** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) **Case No. _____** |
|  | ) |
| **UNITED STATES OF AMERICA,** | ) |
|  | ) |
| **Defendant.** | ) |
|  | / |

## COMPLAINT

Plaintiff 4629 Petroleum, Inc., by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, hereby files this Complaint against Defendant United States of America and alleges:

1. This action seeks judicial review of the Final Agency Decision ("FAD"), dated December 9, 2024, issued by the U.S. Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS"), which imposed a six-month term disqualification on 4629 Petroleum, Inc.'s retail food store precluding its participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

## PARTIES

2. Plaintiff 4629 Petroleum, Inc. is a resident and citizen of Illinois.

3. Plaintiff 4629 Petroleum, Inc. is the owner of the retail food store located at 4629 South Cicero Avenue, Chicago, Illinois 60632 ("4629 Petroleum, Inc.").

4. 4629 Petroleum, Inc. is a "Retail Food Store" as defined in 7 C.F.R. § 271.2.

5. Defendant United States of America is the federal government.

6. USDA is an executive branch department of the federal government.

7.     FNS is an agency of the USDA.

8.     FNS generally administers and has promulgated regulations governing the SNAP pursuant to a delegation by Congress in Section 4 of the Food and Nutrition Act of 2008, 7 U.S.C. § 2013, and from the USDA Secretary.

9.     Formerly known as the Food Stamp Program, SNAP provides supplemental nutrition benefits to nearly 42 million Americans and more than 1.9 million residents of Illinois. SNAP aims to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

10.    Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNS asserts that it has regulatory authority to authorize and disqualify retail food stores from participating in SNAP.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, 28 U.S.C. §§ 1331 and 1346.

12.    Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because 4629 Petroleum, Inc.'s retail food store is located in this judicial district and because the United States of America is deemed a resident of this district and has consented to suit in this district.

13.    4629 Petroleum, Inc. has exhausted all applicable administrative remedies required prior to the institution of this action.

## FACTUAL ALLEGATIONS

14.    4629 Petroleum, Inc. is a convenience store that serves an impoverished community in Chicago, Illinois.

15.    At all times relevant hereto, 4629 Petroleum, Inc. is and has been authorized by FNS to participate in SNAP as an authorized retailer.

16.     At all times relevant hereto, 4629 Petroleum, Inc. has trained its employees regarding SNAP in accordance with FNS requirements.

17.     At all times relevant hereto, 4629 Petroleum, Inc. properly supervised its employees regarding SNAP transactions and program requirements.

18.     At all times relevant hereto, 4629 Petroleum, Inc. sold SNAP-eligible staple food items.

19.     At all times relevant hereto, 4629 Petroleum, Inc. also sold SNAP ineligible items.

20.     Many of the items sold at 4629 Petroleum, Inc. are and were SNAP-eligible items.

21.     The Food and Nutrition Act does not define "common nonfood items."

22.     FNS's SNAP regulations do not define "common nonfood items."

23.     FNS has not issued any publicly issued guidance defining "common nonfood items."

24.     Fabric conditioner, softener sheets, bathroom tissue, plastic spoons, foam plates and plastic cups are not "common nonfood items" under FNS's regulations or otherwise.

25.     No other SNAP-authorized retail food store in the vicinity carries as wide an array of SNAP-eligible items at comparable prices.

26.     At all times relevant hereto, 4629 Petroleum, Inc. is and has been authorized by FNS to redeem SNAP benefits. 4629 Petroleum, Inc.'s FNS-issued SNAP authorization number is 0796630.

27.     On or about July 30, 2024, FNS's Retailer Operations Division ("ROD") sent 4629 Petroleum, Inc. a letter charging the Store with accepting SNAP benefits in exchange for common non-food items in alleged violation of FNS's SNAP regulations contained at 7 C.F.R. § 278.2(a) ("Charge Letter").

28.     The Charge Letter alleged that 4629 Petroleum, Inc. sold fabric conditioner, softener sheets, bathroom tissue, plastic spoons, foam plates, and plastic cups in exchange for SNAP

benefits ("EBT") on three occasions in late January and early February 2024 to an undercover FNS investigator.

29.     On August 23, 2024, 4629 Petroleum, Inc. submitted its response to the Charge Letter.

30.     On October 29, 2024, FNS issued its initial determination ("Initial Determination"). In the Initial Determination, FNS concluded that the alleged violations set forth in three attachments to the Charge Letter occurred, declined to issue a warning or assess a Hardship CMP, and disqualified the Store from participating in SNAP for six months.

31.     The Initial Determination, which consisted of a short form letter, advised that FNS found that "the violations occurred at your store."

32.     On October 30, 2024, 4629 Petroleum, Inc. timely sought administrative review of the Initial Determination pursuant to 7 C.F.R. Part 279.

33.     On November 11, 2024, 4629 Petroleum, Inc. submitted its response in support of its Request for Administrative Review of the Initial Determination ("4629 Petroleum, Inc. Response").

34.     4629 Petroleum, Inc.'s Response requested that FNS's Administrative and Judicial Review Branch ("ARB") reverse the Initial Determination and either issue it a warning or assess a Hardship CMP.

35.     On December 9, 2024, FNS Administrative Review Officer ("ARO") Rich Proulx issued the FAD. A copy of the FAD is attached hereto as Exhibit A.

36.     In its FAD, FNS rejected all of 4629 Petroleum, Inc.'s arguments, notwithstanding the evidence submitted by the Store, and affirmed the Initial Determination that imposed a six-month term disqualification from SNAP upon 4629 Petroleum, Inc.

37.     The FAD failed to address 4629 Petroleum, Inc.'s argument that fabric conditioner, softener sheets, bathroom tissue, plastic spoons, foam plates, and plastic cups are not "common nonfood items."

38.     The FAD rejected 4629 Petroleum, Inc.'s argument that the management of the Store was not careless and did not poorly supervise its employees, concluding in a boilerplate statement that "the Office of Retailer Operations and Compliance attributed violations to 'carelessness or poor supervision by the firm's ownership or management,' pursuant to 7 CFR § 278.6(e)(5) of the SNAP regulations, which results in a disqualification of six months." FAD, at 5.

39.     ARO Proulx did not conduct any independent analysis of the allegations set forth in the Charge Letter and merely relied upon the undercover investigator's report, noting that "the charges of violations are based on the findings of a formal USDA investigation. All transactions cited in the letter of charges were conducted under the supervision of a USDA investigator, and all are fully documented." *Id.* at 6.

40.     The FAD failed to meaningfully address 4629 Petroleum, Inc.'s argument that a warning was appropriate.

41.     The FAD rejected 4629 Petroleum, Inc.'s argument that a CMP was appropriate, noting only that the Retailer Operations Division determined that there were three other authorized stores, including a larger store, located within a half-mile radius of the Store. *Id.* at 6.

42.     The FAD expressly and improperly relied upon the Retailer Operations Division's determination, and ARO Proulx did not conduct an independent analysis.

## FNS's SNAP REGULATIONS

43.     Pursuant to 7 C.F.R. § 278.6(e)(5), the penalty for a firm not previously sanctioned for accepting SNAP benefits in exchange for "common nonfood items due to carelessness or poor supervision" (emphasis added) is a six-month term disqualification from participation in SNAP.

44.     FNS is required to "send the firm a warning letter if violations are too limited to warrant a disqualification." 7 C.F.R. § 278.6(e)(7).

45.     Pursuant to FNS's regulation governing Hardship CMPs, 7 C.F.R. § 278.6(f)(1), FNS is required to impose a CMP as a sanction in lieu of disqualification when doing so would "cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

## COUNT I - JUDICIAL REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R. § 279

46.     Plaintiff 4629 Petroleum, Inc. repeats and re-alleges paragraphs 1 through 45 as if fully set forth herein.

47.     4629 Petroleum, Inc. denies that it engaged in violations of FNS's SNAP regulations or that a six-month disqualification from SNAP was an appropriate penalty.

48.     4629 Petroleum, Inc. did not sell any "common nonfood items" in exchange for SNAP benefits.

49.     At no time did 4629 Petroleum, Inc. poorly supervise its employees.

50.     No evidence in the Administrative Record exists that supports FNS's determination that 4629 Petroleum, Inc. poorly supervised its employees.

51.     At no time did 4629 Petroleum, Inc. act carelessly in permitting the sale of "common nonfood items" in exchange for SNAP benefits.

52.     No evidence in the Administrative Record exists that supports FNS's determination that 4629 Petroleum, Inc. acted carelessly in permitting the sale of "common nonfood items" in exchange for SNAP benefits.

53.     FNS's determination that 4629 Petroleum, Inc. sold "common nonfood items" in exchange for SNAP benefits was invalid, unreasonable, arbitrary, capricious, and unsupported by the evidence.

54.     FNS's determination that 4629 Petroleum, Inc. poorly supervised its employees was invalid, unreasonable, arbitrary, capricious, and unsupported by the evidence.

55.     FNS's determination that 4629 Petroleum, Inc. acted carelessly in permitting "common nonfood items" to be sold in exchange for SNAP benefits was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

56.     FNS's six-month disqualification of 4629 Petroleum, Inc.'s participation in SNAP and denial of its request for a Hardship CMP was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence. *See Kim v. United States*¸ 903 F. Supp. 118 (D.D.C. 1995) (reversing FNS's imposition of a six-month term disqualification where there was no evidence of intent, no evidence that a pattern of selling ineligible items due to carelessness existed, no prior warnings were given, and no trafficking took place).

57.     FNS's six-month disqualification of 4629 Petroleum, Inc. from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to consider all evidence related to the Store.

58.     FNS failed to consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

59.     FNS's six-month disqualification of 4629 Petroleum, Inc. from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to properly consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

60.     FNS's use of a half-mile radius of 4629 Petroleum, Inc. for determining whether other stores in the vicinity sold as many staples at comparable prices was arbitrary and capricious,

61.     FNS's analysis of other SNAP-authorized stores in the vicinity failed to consider where SNAP beneficiaries who shopped at 4629 Petroleum, Inc. resided.

62.     FNS officials and employees did not visit other SNAP-authorized stores in the vicinity in late January and early February 2024.

63.     FNS did not conduct a comparison of prices of staple food items at 4629 Petroleum, Inc. and other SNAP-authorized stores in the vicinity in late January and early February 2024.

64.     FNS's six-month disqualification of 4629 Petroleum, Inc. from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS's analysis of other SNAP-authorized stores in the vicinity (1) failed to consider where SNAP beneficiaries who shopped at 4629 Petroleum, Inc. resided; and (2) was not based, upon information and belief, on store visits to other SNAP-authorized retailers in the vicinity in late January and early February 2024.

65.     FNS's six-month disqualification of 4629 Petroleum, Inc. from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS's analysis was not based on a comparison of (a) prices charged for staple food items or (b) the variety of staple food items at 4629 Petroleum, Inc. and other SNAP-authorized stores in the vicinity in late January and early February 2024.

66.     FNS's six-month term disqualification of 4629 Petroleum, Inc. from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to interview any SNAP beneficiaries whose EBT cards were used at the store in late January and early February 2024.

67.     FNS's six-month term disqualification of 4629 Petroleum, Inc. from participating in SNAP was improper because it was not based on evidence that 4629 Petroleum, Inc. poorly supervised its employees.

68.     FNS's six-month term disqualification of 4629 Petroleum, Inc. from participating in SNAP was improper because FNS had no evidence that 4629 Petroleum, Inc. acted carelessly in permitting the exchange of nonfood items for SNAP benefits.

69.     FNS's denial of 4629 Petroleum, Inc.'s request for a Hardship CMP was not rationally related to any legitimate governmental interest.

70.     FNS's denial of 4629 Petroleum, Inc.'s request for a Hardship CMP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

71.     FNS's failure to issue a warning to 4629 Petroleum, Inc. based on the sale of ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

72.     FNS's imposition of a six-month term disqualification based on the sale of SNAP-ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

73.     FNS's denial of 4629 Petroleum, Inc.'s request for a Hardship CMP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

74.     7 C.F.R. § 278.6(e)(5), is inconsistent with the directive from Congress contained in 7 U.S.C. § 2021(a)(2) in violation of the Food & Nutrition Act of 2008 and the Administrative Procedure Act.

75.     To the extent that 7 C.F.R. § 278.6(e)(5) purports to provide criteria for the disqualification of a SNAP-authorized retailer food store based on the sale of SNAP-ineligible items, those criteria are inconsistent with the directive from Congress contained in 7 U.S.C. § 2021(a)(1) in violation of the Food & Nutrition Act of 2008 and the Administrative Procedure Act.

76.     FNS's denial of 4629 Petroleum, Inc.'s request for a Hardship CMP, which was based entirely upon circumstantial evidence, represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

77.     District courts must exercise independent judgment in deciding whether an agency has stayed within its statutory authority. *Loper Bright v. Raimondo*, No. 22-4751, 2024 WL 3208360 (U.S. June 24, 2024).

78.     District courts should no longer grant deference to agency actions.

79.     District courts should set aside agency actions that are unsupported by substantial evidence.

80.     FNS's decision to deny the Plaintiff's request for a hardship civil money penalty exceeded its authority under the Food & Nutrition Act of 2008.

81.     FNS's decision to deny the Plaintiff's request for a hardship civil money penalty exceeded its authority under its SNAP regulations.

82.     FNS's decision to deny the Plaintiff's request for a hardship civil money penalty was not supported by substantial evidence.

83.     At no time did FNS provide 4629 Petroleum, Inc. with a warning that non-food items, including (but not limited to) fabric conditioner, softener sheets, bathroom tissue, plastic spoons, foam plates, and plastic cups, were being sold in exchange for SNAP benefits prior to issuance of the Charge Letter.

84.     FNS should have provided 4629 Petroleum, Inc. with a warning that fabric conditioner, softener sheets, bathroom tissue, plastic spoons, foam plates, and plastic cups are not eligible for the redemption of SNAP benefits prior to the issuance of the Charge Letter.

85.     FNS should have provided 4629 Petroleum, Inc. with a warning that fabric conditioner, softener sheets, bathroom tissue, plastic spoons, foam plates, and plastic cups were being sold at the Store in exchange for SNAP benefits after the first alleged violation.

86.     In the event that FNS had provided 4629 Petroleum, Inc. with a warning that fabric conditioner, softener sheets, bathroom tissue, plastic spoons, foam plates, and plastic cups were being sold at the Store in exchange for SNAP benefits after the first alleged violation, no further violations would have occurred.

87.     In the event that FNS provided 4629 Petroleum, Inc. with a warning that fabric conditioner, softener sheets, bathroom tissue, plastic spoons, foam plates, and plastic cups were being sold at the Store in exchange for SNAP benefits after the first alleged violation, 4629 Petroleum, Inc. would have re-trained its employees regarding SNAP requirements.

88.     FNS had no basis to have concluded that fabric conditioner, softener sheets, bathroom tissue, plastic spoons, foam plates, and plastic cups are "common nonfood items."

89.     A SNAP retailer charged with the exchange of common nonfood items is eligible for imposition of a Hardship CMP in lieu of disqualification in the event that there are no other SNAP-authorized retail food stores in the vicinity selling as large a variety of staple food products at comparable prices.

90.     Prior to issuing the Initial Determination, FNS failed to conduct any analysis of the variety of staple food products carried at 4629 Petroleum, Inc. or any other SNAP-authorized retailer in the vicinity in late January and early February 2024.

91.     Upon information and belief, prior to issuing the Initial Determination, FNS failed to conduct a contemporaneous analysis of the pricing of staple food products carried at 4629 Petroleum, Inc.

92.     Upon information and belief, prior to issuing the Initial Determination, FNS failed to conduct a contemporaneous analysis of the pricing of staple food products carried at other SNAP-authorized retailers in the vicinity.

93.     The administrative record contains no contemporaneous or direct evidence that any other SNAP-authorized retailer in the vicinity sells as wide a variety of SNAP-eligible items at comparable prices as 4629 Petroleum, Inc.

94.     FNS's decision to deny 4629 Petroleum, Inc.'s request for a Hardship CMP is deficient and erroneous, including because the FAD contains no analysis regarding the prices charged for comparable staple food items at any other SNAP-authorized retailers in the vicinity.

95.     FNS's decision to deny 4629 Petroleum, Inc.'s request for a Hardship CMP is deficient and erroneous, including because the FAD contained no analysis regarding the varieties of staple food items carried by other SNAP-authorized retailers in the vicinity.

96.     FNS's decision to deny 4629 Petroleum, Inc.'s request for a Hardship CMP is deficient and erroneous, including because the FAD contained no analysis regarding the prices of comparable staple food items carried by other SNAP-authorized retailers in the vicinity.

97.     Whether staple food items at comparable prices are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

98.     Whether as wide a variety of staple food items are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

99.     7 C.F.R. § 278.6(f)(1) provides, in pertinent part, that "FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to

SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices." (emphasis added).

100.    FNS, in issuing the FAD, relied upon records and other information never provided to 4629 Petroleum, Inc.

101.    In its FAD, FNS relied upon data concerning other SNAP-authorized stores not "in the vicinity" of the Store.

102.    Upon information and belief, in urban areas, FNS currently uses a half-mile radius in urban areas to determine whether other SNAP retailers are "in the vicinity" in determining whether to assess a Hardship CMP.

103.    FNS calculates distance "as the crow flies," not walking or driving distance when determining whether there are other stores "in the vicinity" in the context of deciding whether to assess a Hardship CMP.

104.    FNS's use of a half-mile radius in rural areas for determining whether other SNAP retailers are "in the vicinity" for hardship CMP purposes is arbitrary and capricious.

105.    FNS's use of a half-mile radius for determining whether other SNAP retailers are "in the vicinity" for hardship CMP purposes ignores that many SNAP beneficiaries do not have cars and do not (and cannot) walk a mile (round trip) to shop at a SNAP-authorized retailer.

106.    Elderly and disabled SNAP beneficiaries cannot be reasonably expected to walk as much as a mile (round trip) to shop at the unidentified store referenced in the FAD.

107.    No factual support exists for FNS's decision to deny 4629 Petroleum, Inc.'s request for a Hardship CMP.

108.    FNS, in issuing the FAD, relied upon undisclosed analyses, including analyses of other SNAP-authorized retail food stores, which were never provided to 4629 Petroleum, Inc.

109. The FAD was not based upon any declarations or affidavits from a USDA or FNS employee or contractor whose identity was disclosed to 4629 Petroleum, Inc.

110. The FAD is FNS's final administrative determination that its six-month disqualification of 4629 Petroleum, Inc. from participation as an authorized SNAP retailer was properly imposed.

111. The FAD is subject to judicial review and a trial *de novo* on all issues pursuant to 7 U.S.C. §§ 2023(a)(13), (15).

112. Judicial review of Final Agency Decisions issued by FNS pursuant to 7 U.S.C. §§ 2023(a) are not governed by the Administrative Procedure Act, and the evidence during *de novo* proceedings is not limited to the administrative record prepared by the agency.

113. The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

114. The FAD was based on SNAP regulations promulgated by FNS in excess of authority granted to it (and USDA) by Congress.

115. FNS incorrectly determined that 4629 Petroleum, Inc. was not eligible for a Hardship CMP in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

116. FNS's denial of 4629 Petroleum, Inc.'s request for a Hardship CMP was premised upon an erroneous, unsupportable, arbitrary, and capricious interpretation of 7 C.F.R. § 278.6.

117. In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to 4629 Petroleum, Inc.

118. Plaintiff respectfully requests a *de novo* review of FNS's FAD, which affirmed the term disqualification of 4629 Petroleum, Inc.'s store from SNAP and determined that the alleged violations took place.

119. Plaintiff respectfully requests a *de novo* review of FNS's FAD in which FNS affirmed the decision in the Initial Determination to decline to issue a warning.

14

120. Plaintiff respectfully requests a *de novo* review of FNS's FAD, which affirmed the decision in the Initial Determination to decline to assess a Hardship CMP.

WHEREFORE, Plaintiff 4629 Petroleum, Inc. respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States and issue an Order granting the following relief:

(a) Reversing the FAD;

(b) Vacating FNS's Initial Determination;

(c) Declaring the FNS's policy of not obtaining data to determine whether other SNAP-authorized stores in the area sell as large a variety of staple food items at comparable prices is arbitrary and capricious, is inconsistent with the Administrative Procedure Act and the Food & Nutrition Act of 2008, and exceeds the authority delegated by Congress therein;

(d) Declaring that FNS's use of a half-mile radius from a retail food store located in urban areas when making a Hardship CMP determination is arbitrary and capricious;

(e) Preliminarily enjoining FNS from disqualifying 4629 Petroleum, Inc. from participating in SNAP during the pendency of this action;

(f) Permanently enjoining FNS from denying 4629 Petroleum, Inc. authorization to participate in SNAP based upon the Initial Determination and the FAD;

(g) In the alternative, directing FNS to impose a Hardship Civil Monetary Penalty in an amount consistent with FNS's regulations;

(h) Awarding 4629 Petroleum, Inc. an amount equal to its reasonable attorneys' fees and costs, including pursuant to the Equal Access to Justice Act; and

(i) Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 16th day of December 2024.

*/s/ Stewart Fried*
Stewart D. Fried, Esq.
Olsson Frank Weeda Terman Matz PC
2000 Pennsylvania Avenue, N.W., Suite 4003
Washington, D.C. 20006
(202) 518-6326 (Direct)
(202) 747-3140 (Facsimile)
sfried@ofwlaw.com

*Attorneys for Plaintiff 4629 Petroleum, Inc.*

**U.S. Department of Agriculture**
**Food and Nutrition Service**
**Administrative Review Branch**

**4629 Petroleum,**

**Appellant,**

**v.**

**Office of Retailer Operations and**
**Compliance,**

**Respondent.**

**Case Number: C02277431**

### FINAL AGENCY DECISION

The U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS) finds that there is sufficient evidence to support the determination by the Office of Retailer Operations and Compliance to impose a six-month disqualification against 4629 Petroleum ("Appellant") from participating as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP).

### ISSUE

The purpose of this review is to determine whether the Office of Retailer Operations and Compliance took appropriate action, consistent with Title 7 of Code of Federal Regulations (CFR) § 278.6(e)(5) in its administration of SNAP when it imposed a six-month period of disqualification against Appellant on October 29, 2024.

### AUTHORITY

According to 7 U.S.C. § 2023 and its implementing regulations at 7 CFR § 279.1, "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may . . . file a written request for review of the administrative action with FNS."

### CASE CHRONOLOGY

USDA conducted an investigation of Appellant's compliance with federal SNAP law and regulations during the period of January 24, 2024 through February 5, 2024. The investigation reported that personnel at Appellant accepted SNAP benefits in exchange for ineligible merchandise on three separate occasions. These items sold during these impermissible transactions are best described in regulatory terms as "common nonfood items." As a result of evidence compiled from this investigation, the Office of Retailer Operations and Compliance informed Appellant, in a letter dated July 30, 2024, that the firm was charged with violating the terms and conditions of the SNAP regulations, 7 CFR § 278.2(a). The letter states, in part, that

**EXHIBIT A**

the violations ". . . warrant a disqualification period of six months (Section 278.6(e)(5)). Under certain conditions, FNS may impose a civil money penalty (CMP) in lieu of a disqualification (Section 278.6(f)(1))."

Appellant replied to the Office of Retailer Operations and Compliance's charges in writing. The record reflects that the Office of Retailer Operations and Compliance received and considered the information provided prior to making a determination.

The Office of Retailer Operations and Compliance notified Appellant in a letter dated October 29, 2024 that the firm was being disqualified for six months from participation as an authorized retailer in SNAP. This determination letter also stated that Appellant's eligibility for a hardship civil money penalty (CMP) according to the terms of Section 278.6(f)(1) of the SNAP regulations was considered. However, the letter stated to Appellant that ". . . you are not eligible for the CMP because there are other authorized retail stores in the area selling as large a variety of staple foods at comparable prices."

On September 6, 2024, Appellant appealed the Office of Retailer Operations and Compliance's decision to impose a six-month disqualification and requested an administrative review of the action. The appeal was granted and implementation of the sanction has been on hold pending completion of this review.

## STANDARD OF REVIEW

In an appeal of an adverse action, Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed. That means Appellant has the burden of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue.

## CONTROLLING LAW

The controlling law in this matter is contained in the Food and Nutrition Act of 2008, as amended (7 U.S.C. § 2021), and implemented through regulation under Title 7 CFR Part 278. In particular, 7 CFR § 278.6(a) and (e)(5) establish the authority upon which a six-month disqualification may be imposed against a retail food store or wholesale food concern.

Section 278.6(e)(5) of the SNAP regulations states, in part, when a firm is to be disqualified for six months:

> If it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management.

7 CFR § 278.6(a) states, in part:

FNS may disqualify any authorized retail food store . . . if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system . . . .

## APPELLANT'S CONTENTIONS

Appellant's responses regarding this matter are essentially as follows:

- Appellant denies the allegations.
- Appellant had trained staff in the proper handling of SNAP transactions.
- Appellant retrained staff after the investigatory period.
- This is the first time the firm has had a problem with SNAP compliance.
- Disqualification would pose a hardship to SNAP participants who rely on the store.
- A six-month disqualification would pose a hardship to the business.
- The alleged violations were too limited to warrant disqualification.
- Appellant was not provided with receipts for the sale of the ineligible items and other relevant records. The failure to do so has a discriminatory impact.
- FNS does not define "personnel," "carelessness," "poor supervision," or "common" in connection to the ineligible items identified in the investigative report.
- There is no evidence indicating the violations were due to carelessness or poor supervision.
- 7 CFR § 278.6(e)(5) is void due to vagueness.
- The six-month delay in issuance of the charge letter hindered Appellant's internal investigation.
- In *Kim v. United States* a small number of transactions involving the sale of ineligible items was insufficient to warrant a term disqualification.
- The charge letter is unconstitutionally vague because it does not identify which transactions in the investigative report violated 7 CFR Part 284.
- There were omissions and misrepresentations in the investigative report.

These explanations may represent only a brief summary of Appellant's contentions. However, in reaching a decision, full consideration has been given to all contentions presented, including any others that have not been specifically listed here.

## ANALYSIS AND FINDINGS

As to Appellant's denial of violations, this review examines the relevant information regarding the determination. Once the Office of Retailer Operations and Compliance establishes a violation occurred, Appellant bears the burden of providing relevant evidence to support a conclusion, considering the record as a whole, that that the permanent disqualification should be reversed. If this is not demonstrated, the case will be sustained. Without supporting evidence and rationale, assertions that the firm has not violated program rules do not constitute valid grounds for overturning the determination.

Appellant alleges it is unable to meaningfully respond to the charges because it was not provided with all the evidence which corroborate the charges. Appellant argues the failure to do so has a discriminatory impact. Appellant provided no evidence in support of its argument that the failure to provide additional documentation has a discriminatory impact. Along with the charge letter, Appellant was provided with the investigative report which provides a detailed description of the violative transactions, including the non-food ineligible items purchased with SNAP benefits.

Appellant stated there were omissions and misrepresentations in the investigative report. A vague, unsubstantiated argument such as this does not provide a valid basis for dismissing the charges or for mitigating the penalty imposed.

Appellant contends that Appellant trained staff in the proper handling of SNAP transactions. When ownership signed the FNS application to become a SNAP authorized retailer, this included a certification and confirmation that Appellant would "accept responsibility on behalf of the firm for violations of the SNAP regulations, including those committed by any of the firm's employees, paid or unpaid, new, full-time or part-time." The violations listed on this certification document include selling ineligible non-food items. Regardless of whom the ownership of a store may use to handle store business, ownership is accountable for the proper handling of SNAP benefit transactions.

This review is limited to considering the circumstances at the time the Office of Retailer Operations and Compliance's decision was made. It is not within this review's scope to consider actions that Appellant may have taken subsequent to this decision to begin to comply with program requirements. There is no provision in SNAP regulations for reducing an administrative penalty on the basis of corrective actions implemented subsequent to investigative findings of program violations. Therefore, Appellant's subsequent staff training, while a positive step, does not provide any valid basis for dismissing the charges or for mitigating the penalty imposed.

Appellant cites *Kim v. United States.* The finding in *Kim* in 1995 is inconsistent with more recent case law.

Appellant maintains that this is the first time there has been an issue related to SNAP. A record of program participation with no documented previous violations, however, does not constitute valid grounds for mitigating the impact of the present charges of sale of nonfood items.

### Regulatory Language is Clear

Appellant argues that FNS does not define "personnel," "carelessness," "poor supervision," or "common" in connection to the ineligible items identified in the investigative report and that 7 CFR § 278.6(e)(5) is void due to vagueness. Appellant insists the alleged violations were too limited to warrant disqualification. Appellant argues there is no evidence indicating the violations were due to carelessness or poor supervision and requests a warning.

The severity of the penalties set forth in paragraph 7 CFR § 278.6(e) are based on the factors listed in 7 CFR § 278.6(d): the nature and scope of the violations; whether the firm was warned violations were occurring; and any evidence of intent to violate the regulations. The penalties for

the sale of nonfood items vary depending on whether the sales of nonfood items were: "expensive or conspicuous" (which results in a three-year disqualification); "the firm's practice" and the firm was previously warned (three-year disqualification); committed by "the ownership or management personnel" (a one-year disqualification); or "due to carelessness or poor supervision" (six-month disqualification).

The non-food items purchased during the investigation were clearly identified. The regulations distinguish between the purchase of common ineligible items and major (expensive or conspicuous) ineligible items. The latter carries more severe penalties. That a single clerk could commit violations with impunity and only run afoul of the regulations if a second clerk were involved would render the enforcement provisions of the Food and Nutrition Act and the enforcement efforts of the USDA virtually meaningless.

The investigation report shows that of the four times that nonfood violations were attempted, store personnel permitted them three times. A clerk(s) who frequently permits the purchase of ineligible items with SNAP benefits is in need of training and supervision. Repeatedly entrusting such a clerk(s) to work unsupervised and handle SNAP benefits is reasonably viewed as careless or the exercise of poor supervision. Accordingly, the Office of Retailer Operations and Compliance attributed violations to "carelessness or poor supervision by the firm's ownership or management," pursuant to 7 CFR § 278.6(e)(5) of the SNAP regulations, which results in a disqualification of six months. This penalty is only permitted if the firm has not been previously sanctioned. Therefore, a six-month disqualification for the violations committed, the minimum, is the appropriate sanction in this case.

### No Lengthy Delay

Appellant asserts a six-month delay in issuance of the charge letter hindered Appellant's internal investigation. There are a number of reasons why a charge letter might not be issued immediately after the conclusion of an investigation. For one, investigations often involve a number of different stores in a geographic area, and no charges are issued until after all store investigations have been completed. The time elapsed between the violations and the charge letter in this case does not have any effect on the potency or validity of the charges.

### No Applicable Mitigating Factors

Appellant asserts that it did not receive prior warnings. To require Appellant to receive a warning of violations before administrative action can be taken would render the enforcement provisions of the Food and Nutrition Act and the enforcement efforts of the USDA virtually meaningless.

### No Undue Hardship to Appellant

Appellant maintains that disqualification would pose an extreme hardship to the firm. Economic hardship is a likely consequence whenever a store is disqualified from SNAP participation. However, there is no provision in the SNAP regulations for reducing an administrative penalty on the basis of possible economic hardship to the firm resulting from such a penalty. To excuse Appellant from an assessed administrative penalty based on purported economic hardship would

render the enforcement provisions of the Food and Nutrition Act of 2008 and the enforcement efforts of the USDA virtually meaningless.

Moreover, giving special consideration to the firm for economic hardship would forsake fairness and equity to competing stores and other participating retailers who are complying fully with program regulations, and also to those retailers who have been disqualified from the program in the past for similar violations. Therefore, Appellant's contention that it will incur economic hardship due to an administrative penalty does not provide any valid basis for dismissing the charges or for mitigating the penalty imposed.

### Investigative Record

Based on a review of the evidence, it appears that the program violations at issue occurred as charged. As noted previously, the charges of violations are based on the findings of a formal USDA investigation. All transactions cited in the letter of charges were conducted under the supervision of a USDA investigator and all are fully documented. Appellant insists the charge letter is unconstitutionally vague because it does not identify which transactions in the investigative report violated the prohibition of selling ineligible non-food items. The investigative record is specific and accurate with regard to the dates of the violations, the specific ineligible merchandise sold in exchange for SNAP benefits, and in all other critically pertinent detail.

### CIVIL MONEY PENALTY

Appellant requested a fine in lieu of the six-month disqualification. A CMP as an optional penalty in lieu of a six-month disqualification was considered in this case. Such a finding is appropriate only if: 1) a store sells a substantial variety of staple food items, and; 2) its disqualification would create a hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices.

In this regard, some degree of inconvenience to SNAP benefit users is inherent in the disqualification from SNAP of any participating food store since the normal shopping pattern of such SNAP benefit holders may temporarily be altered during that period. In this case, however, the Office of Retailer Operations and Compliance has rendered a finding pursuant to 7 CFR § 278.6(f) that it would not be appropriate to impose a CMP in lieu of a period of disqualification. The Office of Retailer Operations and Compliance has determined that Appellant is not the only authorized retail food store in the area "selling as large a variety of staple food items at comparable prices." In addition, the Office of Retailer Operations and Compliance notes that the subject store is classified in the FNS SNAP retailer database as a convenience store. That database also shows three other stores located within a half-mile radius, including a larger store. At least one of these stores is easily accessible to customers, has comparable or better prices, and offers a variety and quality of staple foods comparable to, or better than, those offered by Appellant. Appellant does not carry any unique items or foods that cannot be found at another store. Therefore, the earlier determination that Appellant's

disqualification would not create a hardship to customers, as differentiated from potential inconvenience, is sustained, and a CMP in lieu of disqualification is not appropriate in this case.

## CONCLUSION

Based on the discussion above, the determination by the Office of Retailer Operations and Compliance to impose a disqualification of six months against 4629 Petroleum from participating as an authorized retailer in SNAP is sustained.

In accordance with the Food and Nutrition Act, and the regulations thereunder, this penalty shall become effective thirty (30) days after delivery of this letter. A new application for participation in SNAP may be submitted ten (10) days prior to the expiration of the six-month disqualification period.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 U.S.C. § 2023 and 7 CFR § 279.7. If Appellant desires a judicial review, the complaint must be filed in the U.S. District Court for the district in which Appellant's owner resides, is engaged in business, or in any court of record of the State having competent jurisdiction. This complaint, naming the United States as the defendant, must be filed within thirty (30) days of delivery of this decision. The judicial filing deadline is stipulated by statute; FNS has no authority to grant an extension.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

RICH PROULX                                          December 9, 2024
ADMINISTRATIVE REVIEW OFFICER

**United States
Department of
Agriculture**



Food and
Nutrition
Service

Retailer and
Issuance Policy
and Innovation
Division

Administrative
and Judicial
Review Branch

1320 Braddock
Place, Room 5042
Alexandria, VA
22314

Phone:
(510) 542-4142

rich.proulx
@usda.gov

December 9, 2024

Stewart Fried, Esq.
OFW Law
2000 Pennsylvania Ave. NW
Suite 4003
Washington, DC 20006

RE:    4629 Petroleum
       4629 S. Cicero Ave.
       Chicago, IL 60632-4819

Dear Counselor:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture, Food and
Nutrition Service in response to your September 6, 2024 request for administrative review.
Also included is a statement regarding applicable rights to a judicial review.

The U.S. Department of Agriculture, Food and Nutrition Service finds that there is
sufficient evidence to support the determination by the Office of Retailer Operations and
Compliance to impose a six-month disqualification against 4629 Petroleum from
participating as an authorized retailer in the Supplemental Nutrition Assistance Program.

Sincerely,

RICH PROULX
Administrative Review Officer

Enclosure: Final Agency Decision

USDA is an Equal Opportunity Provider, Employer and Lender.